

**ORDERED in the Southern District of Florida on September 23, 2024.**

**Erik P. Kimball**
**Chief United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                          Case No. 24-17881-EPK

TLC Medical Group, Inc.,                                        Chapter 11
                                                                Subchapter V

      Debtor.
_____/

**ORDER (I) DENYING MOTION FOR RECONSIDERATION AND**
**REINSTATEMENT OF CHAPTER 11 CASE AND FOR AN**
**<u>AUTOMATIC STAY AND OTHER RELIEF AND (II) CANCELING HEARING</u>**

**THIS MATTER** came before the Court on the *Motion for Reconsideration and Reinstatement of Chapter 11 Case and for an Automatic Stay and Other Relief* [ECF No. 51]. In the motion, the debtor TLC Medical Group, Inc. asks the Court to vacate its order dismissing this chapter 11 case [ECF No. 47] and to reinstate the debtor's case under subchapter V of chapter 11, among other relief. The Court also considered the objection filed by the United States Trustee. ECF No. 55.

**<u>Relevant Background and Procedural History</u>**

On August 1, 2024, the debtor filed a voluntary petition under subchapter V of chapter 11. ECF No. 1. The debtor indicated on the petition that it is a health care business as that

term is defined in 11 U.S.C. § 101(27A) and that it is a small business debtor as that term is defined in 11 U.S.C. § 101(51D).  The debtor acknowledged that as a small business debtor it is required to file with the petition its most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or, if such items do not exist, file a statement to that effect under penalty of perjury under 11 U.S.C. § 1116(1)(B).  The petition was signed by Anthony B. Lewis in his capacity as president of the debtor, and by Roderick Ford, Esq. as counsel.

The day after the petition was filed, the clerk notified the debtor of a number of missing filings, including the Chapter 11 Case Management Summary, the list of 20 largest creditors, the corporate ownership statement, various documents that must be filed by a small business debtor under subchapter V, the list of equity security holders, the schedules of assets and liabilities, the statement of financial affairs, and the related declaration.  ECF No. 4.  The clerk's *Notice of Deadline(s) to Correct Filing Deficiency(ies)* provided deadlines for each of these items.

As the debtor indicated on its petition that it is a health care business, the Court entered its standard form *Order Directing U.S. Trustee to Appoint Patient Care Ombudsman* pursuant to 11 U.S.C. § 333.  ECF No. 6.

Because this is a subchapter V case and a subchapter V trustee is appointed in all such cases, the United States Trustee appointed Carol Fox as subchapter V trustee.  ECF No. 7.  On August 2, 2024, the Court entered its standard form order setting a subchapter V status conference on September 11, 2024.  ECF No. 9.

On August 2, 2024, the day after the petition in this case, the United States Trustee sent their usual form letter requiring the debtor to comply with the United States Trustee Guidelines and asking for various documents and certifications to be delivered by August 15, 2024.  The information requested by the United States Trustee was exactly the same

information requested of all chapter 11 debtors in this district and the deadlines were consistent with regular practice.

On August 12, 2024, the debtor filed its list of 20 largest creditors (which inexplicably also listed creditors with liens on accounts receivable) [ECF No. 16], a profit and loss statement, and tax returns [ECF No. 18], a corporate ownership statement [ECF No. 19], and a declaration under perjury that the debtor did not have a balance sheet, statement of operations, or a cash flow statement [ECF No. 17].

In all chapter 11 cases, the staff of the United States Trustee convenes an initial debtor interview with a representative of the debtor prior to the meeting of creditors under 11 U.S.C. § 341.  In this case, the meeting of creditors was scheduled for August 30, 2024, about four weeks after the petition date.  Thus, the United States Trustee scheduled the initial debtor interview on August 16, 2024, about two weeks prior to the meeting of creditors. As is the norm, the United States Trustee expected that the documents and certifications previously requested would be received ahead of the initial debtor interview.

The debtor filed a motion asking the Court to require that two informal conferences scheduled on two consecutive days, with counsel for the United States Trustee and with the subchapter V trustee, be delayed.  ECF No. 20.  It is unclear whether the Court has the power to grant such a motion.  In his 16 years on the bench and 18 years of practice before that, the judge presiding over this case has never seen a motion to delay the initial debtor interview in a chapter 11 case.  When a debtor files a chapter 11 petition, the debtor must be ready to comply with a number of requirements under the Bankruptcy Code, the Bankruptcy Rules, and the guidelines of the United States Trustee.  With the meeting of creditors fast approaching, it was incumbent on the debtor to focus on providing information to the United States Trustee and to the subchapter V trustee to allow them to prepare for that meeting and

otherwise evaluate the debtor and this case.  The Court denied the debtor's motion.  ECF No. 21.

On August 15, 2024, the debtor filed a plan, schedules, and a statement of financial affairs.  ECF Nos. 23 and 24.  The debtor's schedules are incomplete.  Although the debtor is a Florida corporation, the list of equity security holders is blank.  The debtor lists cash on hand and two bank accounts with suspiciously even balances adding up to exactly $10,000.  The debtor operates a medical practice, yet the schedules show no accounts receivable (debtor's counsel later admitted there were substantial accounts receivable as of the petition date).  The schedules reflect no inventory.  Although the debtor discloses several entities that claim an interest in the debtor's accounts receivable, the debtor lists them as holding priority claims rather than secured claims, without indicating the statutory basis for priority.  In the statement of financial affairs, the debtor states year to date revenue of exactly $20,000, and no revenue in the prior two years.  It appears unlikely that the debtor's schedules and statement of financial affairs are accurate or disclose all of the requested information in full.

The debtor's plan is equally perplexing.  The plan appears to be a pre-printed form that is not completely filled out.  Although the debtor's schedules list several entities claiming liens on the debtor's assets, the plan indicates only a single secured creditor.  Several creditors are alleged to have priority claims, but again these seem to be creditors with liens on cash collateral.  The plan itself does not provide treatment for any class of creditors, although an exhibit suggests payment amounts.  Confusingly, an attachment to the plan refers to "the Chapter 11 Trustee."  There is no chapter 11 trustee in this case; the subchapter V trustee does not have the same duties or powers as a chapter 11 trustee.  Although the debtor is a medical practice with a single location, the plan provides for rejection of the debtor's business leasehold but does not explain where the debtor will continue its business.

The plan as filed is facially unconfirmable.  Because of these concerns, the Court scheduled a status conference regarding the plan, to be held on August 28, 2024.  ECF No. 25.

The debtor's principal and counsel attended the initial debtor interview with the United States Trustee on August 16, 2024.  Prior to that meeting, the debtor failed to provide the United States Trustee with proof of insurance for the debtor's real estate, which the debtor valued at $925,000, or commercial general liability insurance.  The United States Trustee extended the deadline for those documents to August 19, 2024.  The debtor also failed to provide proof of closing its pre-petition bank accounts and opening of debtor-in-possession accounts at authorized depositories.  The debtor failed to provide complete bank statements for the 90-day period before the bankruptcy filing.  The debtor's principal, Mr. Lewis, had not signed several required forms under penalty of perjury.  The debtor had not filed an application to retain counsel, in spite of the fact that the debtor is a corporate entity that cannot appear in federal court without counsel, Local Rule 9010-1(B), and in spite of the fact disclosures of compensation filed by Mr. Ford appeared to indicate the debtor provided Mr. Ford a retainer of $15,500 [ECF Nos. 1 and 2].  The debtor's schedules indicated potential interests in cash collateral securing claims exceeding $1.7 million.  The debtor was apparently collecting and using the proceeds from those pre-petition accounts but had not sought Court approval for the use of cash collateral.

On August 20, 2024, the debtor filed a motion seeking authorization to continue to use certain pre-bankruptcy bank accounts for a period of time, but later withdrew that motion.  ECF Nos. 27 and 35.

**Motion to Dismiss or Convert and Debtor's Responses**

On August 20, 2024, the United States Trustee filed an emergency motion to dismiss or convert this case.  ECF No. 28.  The United States Trustee sought dismissal or conversion, for cause, citing several provisions of 11 U.S.C. § 1112(b)(4), including the failure to timely

provide information reasonably requested by the United States Trustee, failure to provide proof of adequate insurance that poses a risk to the estate or to the public, gross mismanagement of the estate due to the failure to maintain adequate insurance to protect the estate, unauthorized use of cash collateral harmful to one or more creditors, and unexcused failure to file the Cash Management Summary required by Local Rule 2081-1(B). The Court set the United States Trustee's motion to dismiss or convert for hearing on August 28, 2024, to coincide with the Court's status conference regarding the plan. ECF No. 29.

The debtor responded with a flurry of filings, starting with a brief notice that the debtor would file a separate response. ECF No. 32. Then the debtor filed a notice that it had opened a debtor-in-possession bank account [ECF No. 34], ignoring the fact that it also needed to provide proof that its pre-petition accounts were closed. The debtor filed a *Debtor's Notice of Compliance and Adequate Protection* [ECF No. 36], attaching a copy of what it described as "commercial property insurance sufficient to protect its commercial real estate asset." The attached document was instead a Certificate of Liability Insurance for a commercial general liability policy rather than a policy insuring the debtor's real estate. The debtor seemed to misunderstand the purpose of the request for proof of insurance for the debtor's substantial real estate. The United States Trustee did not request such a policy to ensure any creditor's security interest was adequately protected. Instead, the United States Trustee sought proof of property insurance to determine whether the assets of the bankruptcy estate were adequately insured to protect the estate itself from loss.[1]

---

[1] The *Debtor's Notice of Compliance and Adequate Protection* [ECF No. 36] also typifies concerns with the debtor's service of filed documents on parties in interest. The included certificate of service indicates that the document was "e-served and (or) mailed via first class U.S. Mail upon" the United States Trustee and "Creditors listed in the Matrix" but no matrix of creditors was attached. Earlier documents contained certificates of service filed by the debtor that included a statement that "Creditors have access via: Uploaded into Bankruptcy Portal/ or made available through U.S. Trustee/ Chapter 11 Trustee". Documents filed on the docket must be served properly by the filing party—

On August 23, 2024, the debtor filed a written response to the United States Trustee's motion to dismiss or convert.  ECF No. 37.  The response is 24 pages long and includes six exhibits.  In opposition to the motion to dismiss or convert, the debtor cited the First, Fifth and Thirteenth Amendments to the United States Constitution, the 1866 Civil Rights Act, Rule 4-8.4(d) of The Rules Regulating the Florida Bar, and 11 U. S. C. §§ 362 and 552(a).

The debtor argued that by filing the emergency motion to dismiss or convert the United States Trustee was attempting to deny the debtor an ability to reorganize under chapter 11, violating the debtor's constitutional right to due process among other constitutional rights.  The debtor suggested that the actions of the United States Trustee were aimed at the debtor's principal and the debtor's counsel as they are "black or African American citizens" thus violating the Thirteenth Amendment.

In spite of the fact that the United States Trustee made no such arguments, the debtor stated that it was qualified to be a debtor under the Bankruptcy Code and that its bankruptcy petition was filed in good faith.

The debtor argued that when the United States Trustee requested "information regarding the Debtor's operations, why it filed, if there are doctors on staff and if there is malpractice insurance" to be provided the same day, this request was unreasonable and was made in bad faith "for the express purpose of derogating and curtailing the Debtor's fundamental right of petition (i.e., First and Thirteenth Amendment, U.S. Constitution; 1866 Civil Rights Act, etc.)".  The debtor argued that when the United States Trustee sent to the debtor's counsel its customary list of questions and request for documents and certifications, and set a deadline consistent with normal practice in this district, this also constituted an

---

here, the debtor.  There is no publicly accessible portal for docketed filings.  Nor is it the responsibility of the United States Trustee or the subchapter V trustee (assuming that is who is meant by the "Chapter 11 Trustee") to serve documents filed by the debtor.

unreasonable request and was done in bad faith.  The debtor argued that the United States Trustee's appointment of a "Chapter 11 Trustee" was an "abuse of discretion" that amounted to a violation of the rights of the debtor as a "Minority and Black Owned Enterprise" under the Thirteenth Amendment and the 1866 Civil Rights Act.  The Court notes here, again, that no chapter 11 trustee was appointed in this case, that the debtor itself filed this case under subchapter V, and that a subchapter V trustee is appointed in every subchapter V case pursuant to 11 U.S.C. § 1183.

The debtor argued that it had filed a chapter 11 plan and that the "'legal' effect of the filing of a Chapter 11 Plan is that it is immediately effective."  This is incorrect, as a chapter 11 plan is not effective unless and until it is confirmed by the Court.

In response to the United States Trustee's argument that the debtor used cash collateral without authorization, the debtor argued that because a pre-petition lien does not attach to post-petition accounts receivable under 11 U.S.C. § 552(a), the debtor could not have violated any restriction on the use of cash collateral.  This argument completely misses the point.  Although the debtor's schedules showed no accounts receivable, the debtor later conceded there were sizeable accounts receivable in existence on the petition date and the debtor was collecting and using the proceeds from those accounts after its bankruptcy petition.  Those pre-petition accounts and their proceeds appear to be cash collateral of several creditors identified in the debtor's schedules.  Thus, even if newly created accounts receivable would not be subject to pre-bankruptcy liens, the use of proceeds from pre-bankruptcy accounts receivable likely constituted use of cash collateral without Court authorization.  In any event, in most cases the debtor is required to grant a replacement lien on accounts receivable created post-petition in order to provide adequate protection for the use of pre-petition cash collateral.

In the response, the debtor attempts to defend its incomplete and confusing responses to the United States Trustee's requests for routine information, documents, and certifications.  It is apparent from the debtor's own filed response that the debtor's counsel failed to access the web link contained in the United States Trustee's initial letter to the debtor.  This is the same letter and web link used by the United States Trustee in every chapter 11 case in this district.  Instead of clicking on that link and accessing the necessary documents – documents every chapter 11 debtor-in-possession is required to provide – the debtor's counsel repeatedly emailed the office of the United States Trustee seeking information he already had.

The debtor attempted to explain why it failed to provide proof of insurance on its substantial parcel of real estate and ultimately stated that, because the debtor intends to sell the real property, there was "no immediate 'threat' to the interests of any creditor."  The debtor then argued that the issue was moot since the debtor acquired new insurance on the property, directing the Court to Exhibit F to the debtor's response.  Unfortunately, Exhibit F is not a policy relating to the real property but is instead a policy for general commercial liability for the debtor's business enterprise, which is operated in leased premises separate from the debtor's real property.

**<u>Hearing on United States Trustee's Motion to Dismiss or Convert</u>**

On August 28, 2024, the Court held a hearing on the United States Trustee's motion to dismiss or convert this case and a status conference on the debtor's plan.  Counsel for the United States Trustee made a thorough presentation regarding the activities of their office relating to the debtor and communications with the debtor's counsel.  The Court noted that there was nothing unusual in the information requested by the United States Trustee or the timing of those requests.

The United States Trustee recounted a number of failures by the debtor and its counsel in responding to requests for customary information requested from all chapter 11 debtors, including most importantly insurance for the debtor's business and properties, information about accounts receivable, proof of closing pre-petition bank accounts, complete bank statements for 90 days prior to the petition, and missing and unsigned certifications. The United States Trustee pointed out that the debtor, a corporate entity that cannot appear in federal court without counsel, had not filed an application to retain counsel. The United States Trustee noted that counsel had represented the debtor's principal prior to the bankruptcy, and apparently continued to do so post-petition, and thus may not be disinterested as required under 11 U.S.C. § 327.

In his presentation, counsel for the debtor repeatedly equated the debtor, a corporation that operates a medical practice, with the debtor's principal and primary physician. The Court instructed counsel that the physician is not his client, that the debtor and the physician are not one and the same, and that the debtor and its counsel owe a fiduciary duty to the estate that may not always align with the interests of the debtor's principal. It was apparent to the Court that the debtor's counsel does not have sufficient experience in representing chapter 11 debtors-in-possession, did not avail himself of sufficient data to undertake the case, and was not able to advise the debtor or interact with the United States Trustee as necessary to prosecute this case.

**Dismissal of this Chapter 11 Case**

The Court granted the United States Trustee's motion to dismiss. In doing so, the Court focused on the debtor's failure to provide information reasonably requested by the United States Trustee in a timely manner (including insurance information), the apparent unauthorized use of cash collateral, and the lack of an application to retain debtor's counsel. In light of the normal and customary actions of the United States Trustee, the Court found

nothing to suggest that the United States Trustee had acted in any way to violate the rights of the debtor or its counsel under the Constitution, the 1866 Civil Rights Act, or otherwise. Importantly, the Court dismissed the debtor's case without prejudice, which means that the debtor may file another bankruptcy petition as and when it sees fit.  During the oral ruling, the Court suggested that the debtor's current counsel does not have sufficient experience to represent the debtor in a subsequent chapter 11 case.  The Court entered its order dismissing this case on August 30, 2024, incorporating the oral ruling on the record on August 28, 2024. ECF No. 47.

**Activity After the Hearing**

On August 29, 2024, the day after the hearing, the debtor filed a *Notice of Compliance and Service of 341 Documents* [ECF No. 46].  The Notice includes a list of bank statements allegedly delivered to the United States Trustee, and a copy of a Business Owners Policy dated August 28, 2024 regarding property and liability coverage for the debtor's business at its leased office premises.  The Notice did not include proof of insurance on the debtor's owned real property which the debtor values at $925,000 in its schedules.  It does not appear that the debtor has ever provided the United States Trustee or this Court with proof of property insurance for its most significant asset.

**Motion for Reconsideration and Analysis**

On September 9, 2024, the debtor filed the present motion for reconsideration.  In the Conclusion of the motion for reconsideration, the debtor states (emphasis in original):

> Whereas the primary material fact upon which this Court relied in rendering the dismissal of this case – i.e., the Debtor's allegedly not having a commercial general liability policy – *does not exist*; and since all the other alleged defects contained within the U. S. Trustee's Emergency Motion to Dismiss may be, *as of legal right*, amended and corrected, this honorable Court should vacate its Order of Dismissal and reinstate this Chapter 11 case together with the automatic stay, and *other equitable relief deemed necessary and appropriate*, forthwith.

This closing paragraph confirms the debtor's failure to understand both the duties of a debtor-in-possession in a chapter 11 case and the Court's actual ruling in dismissing this case. The Court did not dismiss this case because the debtor lacked "a commercial general liability policy." The Court found cause to dismiss this case because (a) the debtor failed timely to provide information reasonably requested by the United States Trustee, including routinely requested insurance information, (b) as of the hearing date the debtor had not provided proof that it had general liability insurance[2] and the debtor has never provided proof of property insurance for the debtor's real property valued at $925,000, and (c) it appeared that the debtor had used cash collateral without authorization. 11 U.S.C. §§ 1112(b)(4)(H), (C), and (D), respectively, provide that such failures constitute cause for dismissal or conversion.

That the debtor may amend its petition, lists, schedules, and statement of financial affairs pursuant to Fed. R. Bankr. P. 1009, does not mean that the debtor may fail to provide complete information routinely requested by the United States Trustee in a timely manner to permit the United States Trustee to prepare for the meeting of creditors under 11 U.S.C. § 341 and otherwise administer the case. Among other things, this is why 11 U.S.C. § 1112(b)(4)(H) provides cause for dismissal if a debtor does not "timely" provide information reasonably requested by the United States Trustee. Nor does the debtor's ability to modify its filed plan have anything to do with the dismissal of this case. While the Court was at the same time holding a status conference on the plan, and thus commented on the debtor's woefully unconfirmable plan, the plan had nothing to do with the Court's finding of cause under 11 U.S.C. § 1112(b).

---

[2] Even if the sole reason for dismissal of this case had been the debtor's failure to have general liability insurance, which was not the only reason, the debtor did not provide proof of any such policy prior to the hearing and did not file it until after the hearing. ECF No. 46.

The debtor argues that there was no evidence that it lacked good faith, acted with unclean hands, or was in willful disobedience of the orders of the Court. These arguments bear no relation to either the United States Trustee's presentation in the motion to dismiss or convert or the Court's actual ruling.

When an entity such as the debtor files a voluntary petition under chapter 11, it undertakes a number of duties and obligations. Some of those duties are set out in 11 U.S.C. § 521 and in various rules including Fed. R. Bankr. P. 1020, 1021, 2003, and 2015, among others. In every chapter 11 case, the United States Trustee consistently requests certain information, documents, and certifications from the debtor. The United States Trustee's manual for Chapter 11 Case Administration is available in PDF format on the Justice Department's website. Every lawyer representing chapter 11 debtors-in-possession should be intimately familiar with the United States Trustee program, which plays an important role in administration of cases before this Court. In this case, the debtor's counsel was not sufficiently familiar with the duties of the debtor under the Bankruptcy Code and Bankruptcy Rules or with the requirements of a debtor-in-possession under the United States Trustee's guidelines and under this Court's local rules and guidelines.

The actions of the United States Trustee in this case were well within the norm for chapter 11 cases in this district. There is nothing in the record to suggest that this debtor or debtor's counsel were treated differently from any other debtor or debtor's counsel who come before this Court. There is no evidence that the United States Trustee's actions or omissions have "unconstitutionally divested" the debtor of any procedural or substantive rights, or have violated the rights of the debtor as a minority-owned business enterprise under the First or Thirteenth Amendments to the Constitution or the 1866 Civil Rights Act. That the debtor's principal may have been the victim of race-based discrimination in connection with his hospital admission privileges has no bearing on whether the actions of the United States

Trustee in this case exhibit disparate treatment of the debtor and debtor's counsel. That the debtor may have limited resources is also not relevant. There is no reason that the debtor and counsel for the debtor could not have responded to the normal and customary requests from the United States Trustee in a timely and complete manner. Indeed, if responding to the consistently applied requests for basic information from the United States Trustee is beyond the debtor's means, it is unclear how the debtor could possibly prosecute a chapter 11 case.

The debtor complains that "the U.S. Trustee's failure of timely and fair communication with the Debtor's counsel, conflicting communications between the U.S. Trustee Office's attorney and staff, fundamentally denied the Debtor – and the Debtor's counsel who is 'new' to the bankruptcy bar of the Southern District, of a reasonable opportunity to fully comply. This presents a 'due process of law' violation in the form of divestiture of the right to 'meaningful court access.'" The debtor's own filings in this case contradict this argument. Exhibit B to the debtor's response to the motion to dismiss includes the initial correspondence from the United States Trustee to the debtor. ECF No. 37-2. On August 2, 2024, the day after the petition was filed, the United States Trustee provided the debtor with the date and time of the initial debtor interview, information on how to access that interview by video conference, access to the guidelines and reporting requirements, and the deadlines to provide information to the United States Trustee. The initial email itself includes a link to the list of authorized depositories for debtor-in-possession bank accounts. The attached letter includes a link to the United States Trustee Operating Requirements and Reporting Requirements and every form for the debtor to provide to the United States

Trustee along with instructions.  The Court tested these links.[3]  In spite of these clear instructions, counsel for the debtor repeatedly emailed the United States Trustee's office asking for them to provide the same data and forms.  *See* ECF No. 37-3.  That the debtor's counsel was unable to obtain information required of all chapter 11 debtors in this district is not the United States Trustee's fault.  Nor does the debtor's status as a minority owned business enterprise present any inherent reason why the debtor should be treated differently from any other debtor-in-possession when it comes to providing the most basic information necessary for administration of its bankruptcy case.

The debtor argues that the United States Trustee may continue a meeting of creditors under section 341 to permit the debtor to provide information not yet submitted.  The United States Trustee does have discretion to continue the meeting of creditors in appropriate circumstances.  However, the failure to provide complete insurance information presents a potential threat to the bankruptcy estate itself.  This is the reason section 1112(b)(4)(C) includes the failure to maintain insurance as an independent basis for conversion or dismissal of a case.  In the Court's experience, the United States Trustee routinely moves to dismiss cases on an emergency basis when the debtor lacks important insurance coverage.  In this case, one general liability policy was not provided until after the hearing on the motion to dismiss[4], and the debtor has never provided proof of insurance for its largest asset, real

---

[3] In addition to the email and letter sent directly to debtor's counsel, counsel could simply have done a web search for "United States Trustee Southern District of Florida."  Such a search leads to the United States Trustee's Region 21 web site.  On the landing page, a clearly marked link for "Chapter 11" reveals all of the information and documents necessary for a chapter 11 debtor: https://www.justice.gov/ust/ust-regions-r21/region-21-chapter-11-2

[4] The debtor complains that when the debtor's counsel offered to have the debtor's principal address the Court regarding insurance coverage, the Court declined to permit the debtor's principal to speak, thus divesting the debtor of the opportunity to respond.  The debtor was represented by counsel.  The Court allowed counsel the ability to consult with his client representative so that counsel could answer the Court's question.  In any case, counsel should have already been intimately familiar with the debtor's insurance coverages as this was a primary concern raised by the United States Trustee in the motion to dismiss or convert.

property the debtor values at \$925,000. The United States Trustee was well within its discretion, consistent with regular practice in this district, to seek to dismiss or convert this case on an emergency basis.

In its motion to dismiss or convert, the United States Trustee had pointed out that the debtor failed to file a Chapter 11 Case Management Summary. Although the Court did not rely on this argument in dismissing the case, the debtor argues that the failure to file the Chapter 11 Case Management Summary was an "easily curable oversight" and includes its Chapter 11 Case Management Summary as Exhibit 3 to the motion for reconsideration. Even if this constituted filing, and it does not, the document was due to be filed about four weeks prior on August 6, 2024. Local Rule 2081-1(B).

The debtor also asks the court to "reinstate the automatic stay pending the resolution of this motion and (or) appeal." The automatic stay under 11 U.S.C. § 362 arises only when there is a pending bankruptcy case. This bankruptcy case is dismissed and so the stay is terminated. 11 U.S.C. § 362(c)(2)(B). The Court cannot impose the automatic stay when there is no pending bankruptcy case.

The debtor cites no rule or legal standard to support its request for the Court to reconsider the order dismissing this case. The only possible standards are those provided in Fed. R. Civ. P. 59 and 60, made applicable here by Fed. R. Bankr. P. 9023 and 9024. As the United States Trustee appropriately argues in their response, no applicable standard under these rules supports reconsideration of the Court's order dismissing this case.

Finally, the debtor appears to ask for a stay pending appeal under Fed. R. Bankr. P. 8007. The debtor has not filed a notice of appeal from the order dismissing this case, so there is no basis to grant a stay pending appeal.

Even if there was a pending appeal from the Court's order dismissing this case, the debtor would be unable to meet the standard for entry of a stay pending appeal. "A stay

pending appeal is an 'extraordinary remedy' and the party seeking it must show: '(1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the[m] unless the [stay] is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest.'" *Woide v. Fannie Mae (In re Woide)*, 730 F. App'x 731, 737 (11th Cir. 2018) (quoting *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000) and citing *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)). The debtor failed timely to provide information reasonably requested by the United States Trustee. The debtor lacks property insurance for its most valuable real estate asset and such lack poses an undue risk to the estate. It also appears that the debtor used cash collateral without authorization. Each of these facts, by themselves, was sufficient cause to dismiss this case under 11 U.S.C. § 1112(b). There was nothing unusual about the United States Trustee's requests for information or the filing of the emergency motion to dismiss or convert such that the constitutional or statutory rights of the debtor or debtor's counsel were implicated. The debtor has essentially no possibility of success in any appeal. Nor is there any potential harm to the debtor if the order of dismissal is not stayed or vacated. The Court dismissed this case without prejudice, meaning the debtor may file a new bankruptcy petition at will.[5] If the need to pay a second filing fee is prohibitive, it is unlikely the debtor can be successful in a chapter 11 case. In contrast, it is unclear what is gained from a stay of the Court's order dismissing this case as doing so would not reimpose the automatic stay but would nonetheless create confusion for creditors. Finally, the public interest does not support allowing a debtor-in-possession to avoid providing the most basic information necessary for

---

[5] If the debtor decides to file a second chapter 11 petition, the Court suggests that the debtor retain counsel with appropriate experience in prosecuting a chapter 11 case. If counsel is not qualified to practice before this Court, the debtor must also retain local counsel. Local Rule 2090-1.

administration of a bankruptcy case while taking advantage of the substantial benefits afforded by the automatic stay and the other provisions of the Bankruptcy Code.

The Court entered an order setting a hearing on the debtor's motion for reconsideration. However, having studied the debtor's motion for reconsideration in light of the history of this case, and having considered the objection filed by the United States Trustee, the Court determines that a hearing is not required.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1.  All relief requested in the *Motion for Reconsideration and Reinstatement of Chapter 11 Case and for an Automatic Stay and Other Relief* [ECF No. 51] is DENIED.

2.  The hearing scheduled for September 24, 2024 is canceled.

###

Copies to all parties of record by the Clerk of Court.